Our next case this morning is Henderson v. Wilkie. Good morning, Your Honor. May it please the Court. After this Court remanded Detective Henderson's case for trial, based on a finding that there were circumstances and comments made by Chief Marsh that might lead a jury to find that the detective's non-selection was discriminatory, the parties agreed to have the case heard by a magistrate judge, and at pre-trial, the defendant moved to exclude nearly all of the evidence that this Court thought might allow a jury to find bias in the decision-making process. The Court granted, the magistrate judge granted that motion, excluding all evidence of anything that postdated the selection at issue in this case, which was May 2014. This Court, in Reardon v. Kempner, reversed a judge's decision where there was a blanket ban on evidence of discrimination that this Court found was negligible. In this situation, the evidence that was barred by the judge was substantial. Because of the bar, the defendant was able to simply argue this was Chief Marsh's first selection and he went off the score sheets and picked the highest score. The evidence that we were going to present would have undercut that defense. We would have been able to show that Chief Marsh, in fact, didn't always pick the highest score contrary to his testimony. Sometimes there was no score at all. Shortly after the selection of Kerry Colby, Chief Marsh, two vacancies opened up for lieutenant. Chief Marsh held segregated selection process wherein he had GS-7 sergeants, African American and Hispanic sergeants, compete through a competitive process where scores were generated for one of those vacancies. And then he handed the other vacancy of lieutenant to a Caucasian officer who was just a GS-6 with no competition at all. We were not able to present that evidence. One of the things that this Court looked at on remand was the situation of an officer named Benjamin Levy who was accused of harassing a woman who came to visit the facility. Kerry Colby, the selectee, was also accused of harassing an employee, in fact, stalking her. The response by Chief Marsh to those events was drastically different. Even though this Court said that was something that could be evidence of bias, the magistrate judge excluded it. Another issue was the fact that there were no supervisory, no African American officers with supervisory authority. We were not able to present evidence on that either. So what the defendant was able to do was argue this is a very simple case, there's no evidence of bias, and because all we could show was that Kerry Colby was a bad choice and we couldn't show why that bad choice was made, the defendant was able to argue that because of jury instruction 3.07 that, jury, whether you think this is unwise or not isn't the issue. The question is whether it was based on some prohibited discrimination. Didn't you though, I mean, you don't talk a lot in your brief, the red brief does a touch, but you don't talk a lot about your brief and actually what happened at the trial. So one of the questions I have is at the trial that happened, didn't you put forward evidence on, that would address kind of pre-promotion bias, pre-promotion animus? We were able to put forward some evidence that Kerry Colby was sort of guided into this position. Right? So there was that. But again, whether that was a good idea or a bad idea, we weren't able to challenge by showing this is something that Chief Marsh didn't continue to do. His pattern in fact started with Detective Henderson and he continued to do discriminatory things. So we were able to show that. But we weren't able to tie that in with kind of a broader pattern of discrimination. And what, these cases are obviously hard enough, people don't really want to assume that things are happening, that these are bad, that people are making discriminatory decisions. And so Chief Marsh could very, and did very easily say, yes, I allowed him to be the acting criminal investigator. So what? And the answer, so what, is, but look at all these other circumstances where other people were not treated as favorably as Kerry Colby, who was selected using the VRA. The other officer where I said he was selected non-competitively, his name was Witt, he was also selected using the VRA. Post-promotion? This was post-promotion. So the only things we had prior to the promotion were instances where it was very obvious that Kerry Colby was a bad choice. But it wasn't really clear that Marsh was, since he had just gotten there, that Marsh was making these decisions because, as he said, he wanted to keep the black and white structure of the police department. So we weren't able to show a pattern. And what you really needed to do was show a pattern. And there was no real reason to keep it out. The only issue was- Well, actually, what you needed to do is show bias at the time. And this employment decision was made. And it strikes me as reasonable for the judge to rule that what happened after, in terms of discipline of others, in terms of discipline of Kerry Colby, in terms of post-promotion employment decisions unrelated to this one, doesn't shed much light on the decision-maker's state of mind at the time this decision was made. Well- Otherwise, these trials of this kind of claim would be unwieldy. It really wouldn't have been because we would have been able to ask Chief Marsh himself. So Chief Marsh testifies, I always pick the highest scorer. We could have shown that that was not true. But where wasn't it true? When it came to white officers. So he would go to fourth. Or he'd have no scores at all. A jury needs to look at the entire picture. And post-promotion, or post-selection, or post-incident evidence is admissible under this court's precedence. And before and after- Well, it's admissible. We're here on a 403 objection. Right. The judge is entitled to use 403 to limit the proofs and to weigh the probative value against confusing the jury, wasting time, all of the other factors that are in Rule 403. And we rarely overturn those. That's true. But in this case, there was- the only judgment that was made was the time. So certainly, the distance between the event and some other post-event issue is important under 403. But we're talking about some things, like the Witt situation was literally a month, started a month after this election. The judge's concern solely was time. He didn't care about the what and how strong it was, even where Marsh had admitted that he held some animus towards Henderson. He didn't care about the what. It was simply the when. I don't know about that, though. I read- this is Judge Schenker, right? That's correct. So I thought there were passages in the transcript under the 403 analysis where he was saying, well, hold on. Some of these post-promotion decisions here are facts are still getting sorted out. This stuff is all getting litigated. I'm worried about the jury getting confused and distracted here. I agree. And that is something that you would take- If you agree with that, then that's not strictly just timing. It's a substantive 403 prejudice analysis. There isn't, as far as we could discern, any case law that says, if a circumstance is in that case, can't testify in another case about what happened to them. So the question should be, how similar is it to Detective Henderson's case? Is there anything we could present that would undermine the government and Chief Marsh's defense, which is, I just picked the highest scorer? And the answer was yes. And even when we got into that with Judge Schenker, we said, look, we've got this situation with a man named Backman, an officer named Backman, where he wasn't the highest scorer. And that will attack the defense in this case, right? And the Judge Schenker simply said, well, when was that? Well, it's after the fact. Because again, Detective Henderson's selection was the first promotion the Chief made. So at that point, we could disprove that he always went with the highest scorer. But we weren't allowed to share that. So the second issue, the second motion to eliminate was, barring plaintiff from presenting evidence or testimony that exceeded the scope of interrogatory responses that plaintiff had objected to, the defendant had never filed a motion to compel, the judge also granted that, our objections were not addressed, they were just sort of bulldozed through. We believe that was inappropriate. However, that, in fact, is eaten up by motion to eliminate number five, because those officers, and you have their declarations in the record, which is 32.1, it's what this court relied on in the first decision. Those officers would have testified about post-promotion issues. And they were prevented from doing that. So even where this court said something was important, the magistrate judge said it was not. There was no weighing of whether Levy's testimony about being treated differently than Colby would have confused the jury. It's not a confusing situation at all. And it could have been handled just by asking Chief Marsh three or four questions on each of these issues. So this really isn't an argument with regard to motion to eliminate number one, because as I understand the record, the judge reserved ruling on that until the time of the trial. Well, and then he eventually, but then he said in a remark that, and I think we have it in our reply, where I'm not letting people, I'm not letting your witnesses testify beyond what you put in their interrogatories. He said that. And at that point, it's the court, we accept the court's ruling, right? But the problem is we didn't really need those people. We in fact could have asked Chief Marsh all of this, because Chief Marsh was the decision maker in every single instance. We're not talking about alternate decision makers, different departments, or anything. It was police officers, same decision maker, within a very short period of time. And then third, obviously our position is the government waived these arguments in the first place because they didn't raise them at any time until on the eve of the trial. I'm going to reserve the balance of my time unless there's any other questions. That's fine. Thank you. May it please the court, counsel. This court gave Mr. Henderson the benefit of the doubt, as well it should, when it reversed Judge Duryagin's grant of summary judgment and remanded the case, giving Henderson the  So he has had his trial, and not surprisingly, given that he ranked 10th behind two African-American candidates, the jury rejected his claim of race discrimination. Judge Shenkier did not err in his evidentiary rulings. This court should affirm for three reasons. First, it was not an abuse of his discretion to exclude the evidence about other African-Americans who were passed over for promotion. Second, any claim of evidentiary error is waived because Mr. Henderson failed to make an offer of proof to the district court about what his evidence was going to be about the other promotions. And finally, he's entitled to a fair trial, not a perfect trial, and he hasn't done anything to show prejudice in the case. So the district court pointedly asked plaintiff's counsel what evidence he had about post-promotion events that he wanted to present, and in response to that, counsel responded that he had evidence about other bad things that Colby had done after he was installed as criminal investigator and that he was disciplined for those. And the judge explained, well, that really isn't going to tell us anything about the decision-maker's state of mind at the time of the selection here. I mean, if Mr. Colby had performed admirably in the position, you wouldn't be saying that that should be able to come in in order for the defendant to justify that decision. And similarly, bad conduct by Mr. Colby isn't going to be something that would shed light on the decision-maker's motivation at the time of the selection at issue. And then the judge pointedly asked plaintiff's counsel, do you have anything else that you want to present about post-promotion events? And plaintiff's counsel said, yes, we want to talk about other African-Americans who were passed over for promotion. And Judge Schenkeer said, well, are there findings of discrimination in those cases? And plaintiff's counsel responded, no. And the judge said, well, doesn't that present serious Rule 403 concerns, a trial within a trial? You know, he has six other people that he are, you know, his other clients in other cases that apparently he wanted to present some evidence about. He never told the judge what his actual evidence would be, just the general subject matter was other African-Americans passed over for promotion. And the judge said, well, that seems to me it creates 403 issues of a trial within the trial and a jury being confused. What is it we're talking about here? Particularly so when all that evidence is directed at Chief Marsh and the decision to terminate Henderson's application was made by a resume screening panel where Chief Marsh didn't sit on the panel. So, that decision is within the broad discretion of the district court. The evidence was also properly excludable because when asked during discovery, Henderson failed to disclose that his witnesses were going to testify on the subject matter of other African-Americans being passed over for promotion. So, during discovery, we served interrogatories asking Mr. Henderson to list his witnesses or list the people that have knowledge about the claims and defenses and what the subject matter of that knowledge is. You know, it's the same information that you're obliged to provide voluntarily under Rule 26. And he answered. And he said what the information was. And it concerned bad acts by Mr. Colby and the comparative qualifications of the candidates. And so, we didn't list witnesses that talked about all these other promotion decisions that involved his clients. And we relied on those answers and discovery closed. The judge told, at the pretrial conference, the judge made clear that if any of these subject matters were otherwise made known during discovery, that would be sufficient. He was very liberal about that. He continued this motion several times, each time directing Henderson's counsel to talk with us and to explain to us, you know, what this evidence is, why it ought to be admissible in the case, even though the subject matter wasn't listed. And Mr. Henderson's counsel steadfastly refused to do that. In fact, in the end, we wrote him repeatedly asking him to do that. And he responded to us saying that he would not and that to do so would interfere with his strategy to preserve issues for appeal. So, apparently, his strategy was to keep the substance of whatever his evidence is, stuff that he's described to you here, in much more detail than he even put in his brief. But his strategy was to keep that secret from the district court and us. And so, in the end, the district court confronted him in court and asked him whether he had discussed this with us, as he had ordered him to do. And Henderson's counsel said, no, he hadn't. And that he didn't intend to present any evidence on subject matters not identified in his interrogatory response. And so, that's another alternate ground on which all the evidence at issue could properly be excluded. And then, from there, on that issue, at least as I read the transcript, the district court still left it open. Right. And he has a minute order where he wrote and left it open. We are the ones who brought it up at trial. We wanted to close the loop on this and find out what was happening. Our position in this case was that we really didn't know what the evidence was that he wanted to present at trial, because he hadn't told us. And apparently, it went beyond what we thought was relevant in the case. And we wanted to find out what that was and talk about it under Rule 403. And this is really, this, you know, all these, well. So, the second reason that the district court should be affirmed is that Mr. Henderson waived any claim of evidentiary error by failing to make an offer of proof. So, it's not an offer of proof to say, you know, I want to present evidence about other promotions. You have to say what your evidence is. You know, what are you going to be presenting? And if it's evidence that Chief Marsh admitted that he had discriminated against somebody else, well, that would be one kind of analysis. But if the evidence is just going to be that other, that in another promotion case, African Americans were passed up, well, that has, it's hard to see what the probative value of that is. And if it gets into more detail, you'd have to think about, well, what's the defense going to have to do in response to this? How much time are we going to spend arguing about these other cases? And so, he never did that. The law is clear that waives his claim of evidentiary error. And his trick bag strategy of keeping that a secret in the district court is not one that can succeed on appeal. Finally, as the district court found in denying Henderson's post-trial motion, he failed to show prejudice. You know, the decision in this case was made by a blind resume screening panel, and Chief Marsh didn't sit on that panel. And that panel scored two African American candidates higher than Henderson. In fact, one of them, he advanced on to the next stage for an interview. And so, there's no showing by Henderson that his evidence about other things or other promotions would have helped him to show that the reason that Henderson was not promoted was because of his race. And I'd be happy to answer any questions, but there's no further, I'd ask that the district court be affirmed. Thank you. Mr. Randolph. Thank you. In response, there is no secret here. There was no secret. All of this information was in the record already. That's why the government brought their motion in limine to exclude all of the evidence. Where the evidence that we wanted to address wasn't in the record, we specifically told the judge what it was. With respect to a waiver because we didn't get a, give a proffer, the evidence was evident that we intended to elicit from Chief Marsh was evident from the context itself. We already said these were discrimination or discriminatory decisions that Chief Marsh made passing up often vastly more experienced African American officers for less experienced officers by manipulating the system in a variety of different ways. There were no questions from the judge about what we were trying to get in. It really was solely the when. There was a question about whether the motion to eliminate itself was granted. The appendix at pages 107 and 113 where the magistrate judge specifically says he will not allow witnesses to testify beyond what we disclosed in our interrogatory responses and as the government has not addressed at all, we objected to their requests and they just sat on those objections and did nothing, nothing the entire time for years. With respect to the 403 issue, if the judge weighed evidence as it came, as it was being presented to him in trial, absolutely, I totally agree that would be we got our shot, but that's not what happened here. We got a blanket ban from the beginning and even where the evidence might be of discrimination might be negligible, this court has reversed cases in those circumstances, specifically the weirding case. Detective Henderson did not get a chance to put on his case. The issue of the scores, as this court already decided in the first time, was really potentially a nullity because that whole thing had expired and what Chief March did was then hand Kerry Colby the position itself through using the VRA and we were going to be able to show that he used that same non-competitive process for other officers that the defense that he was, he just picked the highest score, was simply untrue. We got, Detective Henderson was not able to present any of that and the detailed analysis required under 403 did not occur at all. It would have been futile for us to go beyond, beyond the date because that was honestly the only thing the judge was concerned with. Even when we got into the details, he only cared about the date. So we would ask that this case be remanded so that Detective Henderson can have his day in court. Thank you. Thank you. Our thanks to all counsel. The case is taken under advisement.